**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**PPS, INC.**                                                                                    **PLAINTIFF**

**v.**                                            **4:08CV00585-WRW**

**FAULKNER COUNTY, ARKANSAS,** *et al***.**                            **DEFENDANTS**

**ORDER**

In this case, a Faulkner County Sheriff's Office investigator seized a stolen industrial paint sprayer from a pawn shop without a warrant, and released the sprayer to the true owner. The issues are whether the seizure violated the pawn shop's right to due process and its right to be free from unreasonable seizure, under both federal and state law.

The parties filed motions for summary judgment,[1] and responses.[2] Defendants' Motion is GRANTED, Plaintiff's Motion is DENIED, and this case is DISMISSED.

**I.       SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[3] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[4]

---

[1]Doc. Nos. 15, 18.

[2]Doc. Nos. 21, 23. Defendants also filed a reply. Doc. No. 30.

[3]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[4]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[5] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[6] I must view the facts in the light most favorable to the party opposing the motion.[7] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*, "[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[8]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[9]

---

[5]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[6]*Id.* at 728.

[7]*Id.* at 727-28.

[8]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[9]*Anderson*, 477 U.S. at 248.

**II.     BACKGROUND[10]**

Plaintiff owns and operates several pawnshops. Defendants are law enforcement officers, and Faulkner County, Arkansas.

James Baldwin (not a party to this case) loaned his employee, Keadron Walker, a truck and a Graco Paint Sprayer, Model 795, SN BA3166 (the "Sprayer"), neither of which Mr. Walker returned. In September, 2007, Mr. Walker pawned the Sprayer at Plaintiff's shop located at 8302 Baseline Road, Little Rock, Arkansas (the "Pawn Shop").

Mr. Baldwin reported to the Faulkner County Sheriff's Office ("FCSO") that the truck and Sprayer had been stolen. Mr. Baldwin got a tip that the Sprayer was at the Pawn Shop, and passed that information on to the FCSO. Around September 27, 2007, Sergeant David Hall, an FCSO investigator and full-time FCSO employee, went to the Pawn Shop,[11] and Mr. Baldwin met him there.

At the Pawn Shop, Sgt. Hall explained to Robert Casto, Jr., the manager on duty, that he needed the Sprayer for his investigation, and insisted that the Sprayer be surrendered immediately. Plaintiff alleges Sgt. Hall threatened to arrest Mr. Casto for theft by receiving if he did not turn over the Sprayer at once.[12] Initially, Mr. Casto was reluctant and did not want to let Sgt. Hall take the Sprayer.

Mr. Casto relented and Sgt. Hall took the Sprayer. Mr. Casto signed a form titled "Faulkner County Sheriff's Office Pawn Shop Seizure Report/Property Receipt." The seizure

---

[10]Unless otherwise noted, the facts in the Background section were taken from the parties' Statements of Undisputed Facts. Doc. Nos. 16, 19, 22, 24.

[11]A second FCSO investigator was with Sgt. Hall, but is not a party to this suit.

[12]Doc. No. 1.

was made without a warrant or any other court order.  The Seizure Report/Property Receipt that Mr. Casto signed stated that the "property shall be stored for safekeeping in the Property Room of the Faulkner County Sheriff's Office until the identity of the rightful owner can be established."[13] Sgt. Hall did not take the Sprayer to the property room, but gave the Sprayer to Mr. Baldwin, who was waiting in the Pawn Shop parking lot.

Mr. Baldwin signed a Faulkner County Sheriff's Department Evidence Release Form, which identified the Sprayer as evidence. Defendants maintain that the Sprayer, though kept by Mr. Baldwin, remains in the constructive possession of the FCSO. Plaintiff disagrees.

The Sprayer was never returned to Plaintiff, and no post-seizure hearing was held.

### III. DISCUSSION

#### A. Fourth Amendment

The Fourth Amendment prohibits the unreasonable seizure of property.[14] "A seizure of property occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'"[15] A seizure without a warrant is unreasonable, unless it falls into a well-defined exception[16] -- such as the plain view exception,[17] the closely regulated industry

---

[13] Doc. No. 15-2.

[14] U.S. CONST. AMEND. IV.

[15] *Dixon v. Lowery*, 302 F.3d 857, 862 (8th Cir. 2002) (citing *Soldal v. Cook County*, 506 U.S. 56, 61 (1992)).

[16] *Dixon*, 302 F.3d at 862.

[17] Defendants contend that the Sprayer was in plain view. But, the deposition testimony of Sgt. Hall indicated that the Sprayer was in a different room behind a closed door -- not on the floor for sale. Doc. No. 23. Deposition of Sgt. Hall at 19.

exception,[18] or the exigent circumstances exception -- or when there is valid consent. Consent is valid if it was voluntary, that is, "in the light of the totality of the circumstances, consent was given without coercion."[19] Some factors considered when determining if consent was voluntary are: the age of the person giving consent; his intelligence; the lack of any advice about his constitutional rights; and the use of threats by the officer.[20]

In this case, there was both consent and exigent circumstances. Mr. Casto was a manager at the Pawn Shop. Plaintiff alleges Sgt. Hall threatened to arrest Mr. Casto if Mr. Casto did not surrender the Sprayer. Mr. Casto, in his deposition, testified that he called attorney Douglas Braswell, who allegedly directed Mr. Casto to turn over the Sprayer and get a receipt. Mr. Casto thus had access to advice about his constitutional rights, and was told to turn over the Sprayer.[21] While Mr. Casto apparently was not pleased that Sgt. Hall took the Sprayer,[22] his consent was based not only on Sgt. Hall's threats, but on the advice of counsel. Considering Mr. Casto's consent in the light of the totality of the circumstances, I cannot find that Sgt. Hall's actions

---

[18]Defendants assert that Plaintiff had no expectation of privacy. The expectation of privacy in a commercial establishment is less than in one's home, especially if the "closely regulated industry" exception applies. See *New York v. Burger*, 482 U.S. 691 (1987). The closely regulated industry exception applies to a warrantless search and seizure, however, only when a statutory scheme sets out an inspection program that provides a "constitutionally adequate substitute for a warrant." *Burger*, 402 U.S. at 703. While Arkansas requires, by statute, that certain law enforcement officers have access to certain pawn shop records "at any and all reasonable times," Arkansas statutes set out no inspection scheme that would give a law enforcement officer the right to inspect a pawn shop's premises at any and all reasonable times. Ark. Code Ann. § 12-12-103(c)(1).

[19]*United States v. Escobar*, 389 F.3d 781, 784-85 (8th Cir. 2004).

[20]See *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (U.S. 1973)

[21]Doc. No. 23.

[22]*Id*.

overbore Mr. Casto's will. Further -- though this is unlikely -- had the Sprayer not been seized, the Pawn Shop potentially could have sold or otherwise disposed of the item before a warrant was obtained.[23]

### B. Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no State may "deprive any person of life, liberty, or property, without due process of law . . . ."[24] But the protections of the Due Process Clause do not extend to all property interests. "A plaintiff is entitled to due process *only* when a protected property . . . interest is at stake."[25] Under Arkansas law, a pawn shop has a protected property interest in an item in its

---

[23]Some states have legislation allowing law enforcement officials to place an allegedly stolen item in a pawn shop's possession on "hold" for a certain period of time, during which period the pawn shop is prohibited from selling the property. See, for example, Cal Bus & Prof Code § 21647 (2009), which provides, in part:
> (a) Whenever any peace officer has probable cause to believe that property, except coins, monetized bullion, or "commercial grade ingots" as defined in subdivision (d) of Section 21627, in the possession of a pawnbroker, secondhand dealer, or coin dealer is stolen, the peace officer may place a hold on the property for a period not to exceed 90 days. When a peace officer places a hold on the property, the peace officer shall give the pawnbroker, secondhand dealer, or coin dealer a written notice at the time the hold is placed, describing the item or items to be held. During that period the pawnbroker, secondhand dealer, or coin dealer shall not release or dispose of the property, except pursuant to a court order or upon receipt of a written authorization signed by any peace officer who is a member of the law enforcement agency of which the peace officer placing the hold on the property is a member. A pawnbroker, secondhand property dealer, or coin dealer shall not be subject to civil liability for compliance with this section.

[24]U.S. CONST. AMEND. XIV, § 1.

[25]*Kloch v. Kohl*, 545 F.3d 603, 607 (8th Cir. 2008) (emphasis added).

inventory, even when that item is stolen.[26] Accordingly, I find that Plaintiff had a protected property interest in the Sprayer.

Generally, the Due Process Clause requires "notice and opportunity for hearing appropriate to the nature of the case" before any person is deprived of property.[27] "[I]t has become a truism that '*some* form of hearing' is required before the owner is finally deprived of a protected property interest."[28] With respect to final deprivation of a protected property interest, a plaintiff may be required to exhaust state remedies before it brings a § 1983 claim alleging a violation of due process. When the plaintiff alleges that it was entitled to process before the taking, however, there may be not be an exhaustion requirement.[29]

Despite that a hearing is almost always required, "[d]ue process is a flexible concept . . . and calls only for such procedural protection as the particular situation demands."[30] Deciding the due process demands for a particular situation generally requires consideration of three distinct factors:

---

[26] *Landers v. Jameson*, 355 Ark 163 (2003). See also *Wolfenbarger v. Williams*, 826 F.2d 930, 933 (10th Cir. 1987) (pawnbroker has legitimate possessory interest in stolen property as against rest of world, except as to true owner).

[27] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1949).

[28] *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) (citing *Board of Regents v. Roth*, 408 U.S. 564, 570-71 n.8 (1972)). There are, however, two exceptions to the hearing requirement: (1) "where there is a need for 'quick action by the State when there is a compelling or overriding state interest in a summary adjudication'"; and (2) when the deprivation is caused by the "random and unauthorized" acts of a state actor. *Keating*, 562 F.3d at 928. Neither exception applies here.

[29] See *Zinermon v. Burch*, 494 U.S. 113, 132 (1990).

[30] *Keating v. Nebraska Pub. Power Dist.*, 562 F.3d 923, 928 (8th Cir. 2009).

first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, or additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[31]

Each factor is analyzed below.

### 1.   Private Interest Affected

Pawn shops are legitimate businesses and have a security interest in the items in their inventory. Allowing the taking of a pawn shop's inventory without any form of hearing interferes with a pawn shop's business expectation.

### 2.   Risk of Erroneous Deprivation

The risk of erroneous deprivation should be considered in light of the procedures used by the FCSO and "the probable value, if any, of additional or substitute procedural safeguards."[32] There is apparently no procedure set out to ensure that the person claiming to be the true owner is indeed the true owner, so there is at least some risk of erroneous deprivation.

### 3.   The Government's Interest

The fiscal and administrative burden that the government would incur in connection with implementing predeprivation procedures appears to be minimal.

The three *Mathews* factors weigh in Plaintiff's favor. Under *Mathews*, Plaintiff would have been entitled to some sort predeprivation protection. Plaintiff, however, waived its right to

---

[31]*Mathews v. Eldrige*, 424 U.S. 319, 335 (1976).

[32]*Id*.

predeprivation process when it consented to Sgt. Hall taking the Sprayer. The consent issue is discussed above.

### C. Qualified Immunity

When a state official is sued in his individual capacity, the official is entitled to qualified immunity as long as his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[33] The initial inquiry is whether, taken in the light most favorable to the allegedly injured party, the facts show that a state official violated a constitutional right.[34] If a constitutional right has been violated, the next step is to determine if that right was clearly established at the time of the violation.[35] "A right is clearly established if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[36]

Plaintiff sued both Sgt. Hall and Sheriff Byrd in their individual capacities. The record does not support a claim that Sheriff Byrd knew about the seizure of the Sprayer, much less participated in the seizure. Plaintiff's individual capacity claims against Sheriff Byrd are dismissed.

Even if Sgt. Hall's actions violated Plaintiff's Fourteenth amendment rights, Sgt. Hall is entitled to qualified immunity. The analysis turns to whether any constitutional violation was clearly established at the time Sgt. Hall seized the Sprayer. Plaintiff asserts that the violation

---

[33]See *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007).

[34]*Id*.

[35]See *id*.

[36]*Brown v. City of Golden Valley*, 574 F.3d 491, *18 (8th Cir. 2009).

was clearly established under *Fuentes v. Shevin*[37] and *Landers*. I disagree. The Arkansas Supreme Court in *Landers* found two statutes unconstitutional as applied to the pawn shop in that case.[38] Those two statutes are not at issue here. The Court in *Landers* did not define what a police hold entailed, decide whether a police hold was a seizure, or address the constitutionality of police holds. Here, unlike in *Landers*, it is the conduct of the law enforcement officer at issue.

Based on *Landers*, I believe that, if this issue were before the Arkansas Supreme Court, the Court would find that the "hold" Sgt. Hall put on the Sprayer was a seizure, and that the seizure violated Plaintiff's Fourteenth Amendment rights. But, the test here is whether the constitutional right was clearly established, and I find that it was not.

### D.     Municipal / Sheriff Liability

Plaintiff alleges that Faulkner County (the "County") has a custom or policy condoning the improper seizure, retention, and disposal of property.[39] A county may be liable under § 1983 if an official custom or policy of the county caused the constitutional deprivation.[40] "A municipal custom is a practice of municipal officials that is not authorized by written law, but which is 'so permanent and well-settled . . . as to [have] the force of law.'"[41] To establish a constitutional violation resulting from a governmental custom, a plaintiff must prove the

---

[37] 407 U.S. 67

[38] *Landers*, 355 Ark. 163.

[39] Doc. No. 1.

[40] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978).

[41] *Harris v. City of Pagedale*, 821 F.2d 499, 504 n.7 (8th Cir. 1987) (quoting *Monell*, 436 U.S. at 691.)

"existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; [and] [d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct . . . ."[42] The record indicates neither a persistent pattern of unconstitutional conduct by FCSO employees, nor deliberate indifference by the County's policymaking officials. Plaintiff offers no example of unconstitutional conduct beyond Sgt. Hall's seizure of the Sprayer from the Pawn Shop. One incident does not constitute a custom.

"A 'policy' is a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'"[43] "An official policy can be inferred from a municipality's omissions as well as from its acts."[44] Sheriff Byrd testified that no policy exists with respect to seizures from pawn shops. Plaintiff alleges that the County's failure to have a policy for seizures specific to pawn shops resulted in the violation of Plaintiff's constitutional rights. Municipal liability can arise from a county's failure to have a policy if the county's failure reflected "a 'deliberate' or 'conscious' choice" by the county to allow the possibility of a constitutional violation.[45] No evidence supports a conclusion that the County had notice of potential constitutional violations and consciously chose to ignore that potential. Accordingly, there is no basis for municipal liability in this case.

---

[42]*Jane Doe "A" v. Special School Distr.*, 901 F.2d 642, 646 (8th Cir. 1990) (citing *Harris v. City of Pagedale*, 821 F.2d 499, 504-07 (8th Cir. 1987)).

[43]*Hayes v. Faulkner County*, 388 F.3d 669, 674 (8th Cir. 2004) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986).

[44]*Wellington v. Daniels*, 717 F.2d 932, 935 (4th Cir. 1983).

[45]*City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir. 2007).

## CONCLUSION

Based on the findings of fact and conclusions of law above, Defendants' Motion for Summary Judgment (Doc. No. 18) is GRANTED on Plaintiff's federal and state law claims, Plaintiff's Motion for Summary Judgment (Doc. No. 15) is DENIED, and this case is DISMISSED.

IT IS SO ORDERED this 28th day of September, 2009.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE